Warren R. Paboojian, Esq. (SBN 128462)
Adam B. Stirrup, Esq. (SBN 257683)
**BARADAT & PABOOJIAN, INC.**
720 W. Alluvial Avenue
Fresno, California 93711
T: (559) 431-5366 | F: (559) 431-1702

Stuart R. Chandler, Esq. (SBN 088969)
**STUART R. CHANDLER APC**
761 E. Locust Avenue, Suite 101
Fresno, California 93720
T: (559) 431-7770 | F: (559) 431-7778

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

DARREN NOBLE, individually and on behalf of decedent, DYLAN NOBLE; DARREN NOBLE, as Successor-in-Interest to the Estate of Dylan Noble,

Plaintiff,

v.

CITY OF FRESNO, and the CITY OF FRESNO POLICE DEPARTMENT, RAYMOND CAMACHO, ROBERT CHAVEZ, and DOES 1 thru 50, inclusive,

Defendants.

---

VERONICA NELSON, individually, and on behalf of Decedent, DYLAN NOBLE; VERONICA NELSON, as Successor-in-Interest to the Estate of Dylan Noble,

Plaintiff,

v.

CITY OF FRESNO; CITY OF FRESNO POLICE DEPARTMENT; RAYMOND CAMACHO; ROBERT CHAVEZ; and DOES 1 to 25, inclusive,

Defendants.

U.S. Magistrate Judge Barbara A. McAuliffe

Lead Case No.: 1:16-cv-01690-DAD-BAM
Member Case No.: 1:16-cv-01754-DAD-BAM

**PLAINTIFFS' JOINT DISCOVERY MOTION TO COMPEL DEFENDANT CITY OF FRESNO TO PRODUCE DOCUMENTS**

Action Filed: September 1, 2016
Trial Date: October 16, 2018

Hearing Date: November 16, 2017
Time: 3:00 p.m.
Department: 8

The following parties have appeared through their respective Counsel.

| PARTY | COUNSEL |
| --- | --- |
| Plaintiff,<br>DARREN NOBLE | Warren R. Paboojian, Esq.<br>Adam B. Stirrup, Esq.<br>**BARADAT & PABOOJIAN, INC.**<br>720 W. Alluvial Avenue<br>Fresno, California 93711<br>(559) 431-5366 Telephone<br>(559) 431-7778 Facsimile |
| Plaintiff,<br>VERONICA NELSON | Stuart R. Chandler, Esq.<br>**STUART R. CHANDLER APC**<br>761 E. Locust Avenue, Suite 101<br>Fresno, California 93720<br>(559) 431-7770 Telephone<br>(559) 431-7778 Facsimile |
| Defendants,<br>CITY OF FRESNO and<br>OFFICER RAYMOND CAMACHO | Mildred K. O'Linn, Esq.<br>Tony M. Sain, Esq.<br>Lynn L. Carpenter, Esq.<br>**MANNING & KASS**<br>**ELLROD, RAMIREZ, TRESTER LLP**<br>801 S. Figueroa Street, 15th Floor<br>Los Angeles, California 90017<br>(213) 624-6900 Telephone<br>(213) 624-6999 Facsimile |
| Defendant,<br>OFFICER ROBERT CHAVEZ | Bruce D. Praet, Esq.<br>**FERGUSON PRAET & SHERMAN**<br>1631 E. 18th Street<br>Santa Ana, California 92705<br>(714) 953-5300 Telephone<br>(714) 953-1143 Facsimile |

**TO THE HONORABLE BARBARA A. MCAULIFFE, UNITED STATES MAGISTRATE JUDGE:**

Pursuant to Court's order in this matter, the Plaintiffs hereby respectfully submit this joint statement regarding discovery dispute in support of Plaintiff DARREN NOBLE'S motion to compel further responses to Plaintiff's Request for Production of Documents ("RFP"), Set One and Plaintiff VERONICA NESLON'S motion to compel further responses to Plaintiff's Request for Production of Documents, Set One and Set Two. Plaintiffs RFP sets one and set two properly

served on Defendant CITY OF FRESNO ("City"), OFFICER RAYMOND CAMACHO and OFFICER ROBERT CHAVEZ. Plaintiff NOBLE submitted Request for Production Set One. Defendant City, served its responses to the Requests for Production of Documents (Noble Set One and Nelson Sets One and Two). The City's first round of objections did not include the necessary declaration from an individual capable of meeting the Declaration requirements to invoke the official privilege objection. On July 31, 2017, Defendant City, served an "Amended Privilege Log" which purported to address both Plaintiffs' Requests for Production of Documents with a Declaration of Lt. Mindy Castro in order to attempt to support the official privilege claims. Unfortunately, Defendant City, in their Amended Privilege Log addressed the Plaintiff Nelson's first Sixty Nine RFP requests from Set One and then addressed an additional set of Requests 70-174 that have no correlation to any Request for Documents submitted by either Plaintiff Nelson's RFP Sets 1 or 2. All discovery referenced herein has been lodged with the Court.

In compliance with Local Rule 230, Plaintiffs' Counsel met and conferred with Defense Counsel on August 10, 2017 and again with your Honor on September 1, 2017. The discovery dispute letters have been lodged with this court.

The parties are unable to resolve the discovery disputes as detailed herein.

DATED: September 29, 2017

Respectfully submitted,

BARADAT & PABOOJIAN, INC.

By: ______________________________

Adam B. Stirrup, Esq., Attorneys for Plaintiff, DARREN NOBLE

DATED: September 29, 2017

Respectfully submitted,

STUART R. CHANDLER APC

By: ______________________________

Stuart R. Chandler, Esq., Attorney for Plaintiff, VERONICA NELSON

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..... 5

1. PLAINTIFFS' INTRODUCTORY STATEMENT AND SPECIFICATION OF ISSUES IN DISPUTE ..... 6

A. INTRODUCTION ..... 6

B. DISCOVERY ISSUES IN DISPUTE ..... 7

C. CATEGORY ONE DOCUMENTS/FACTUAL DOCUMENTS ..... 8

I. INITIAL DISPATCH RECORDINGS ..... 9
II. SCENE AND EVIDENCE PHOTOS AND LOGS ..... 9
III. WITNESS AND PARTICIPANT STATEMENTS ..... 9
IV. POLICE INVESTIGATION OF THE OIS ..... 10

D. PLAINTIFF NELSON'S SECOND REQUEST FOR PRODUCTION/FACTUAL INFORMATION ..... 10

E. THE CITY'S RESPONSES RE FACTUAL INFORMATION COLLECTED AS A RESULT OF OIS ..... 11

2. THE CITY'S CLAIMS OF PRIVILEGE ARE IMPROPER ..... 11

3. DOCUMENTS WHICH MAY CONTAIN PROTECTED CONTENT ..... 15

A. AUDIO TRANSCRIPTS OF INTERVIEWS OF OFFICERS ..... 16

B. DEFENSE OBJECTIONS ..... 16

C. DEFENDANT OFFICERS CHAVEZ AND CAMACHO ..... 18

D. REMAINING REQUEST FOR PRODUCTION OF DOCUMENTS WHICH PLAINTIFFS CONCEDE A PROTECTIVE ORDER AND CONFIDENTIALITY AGREEMENT IS OR MAY BE WARRANTED ..... 20

E. WITHDRAWN PRODUCTION REQUESTS ..... 20

F. PRESS RELEASE INFORMATION/CHIEF DYER ..... 22

CONCLUSION ..... 22

**TABLE OF AUTHORITIES**


42 U.S.C. § 1983 (Monell)........................................6

CA Civil Code § 52.1........................................6

*Frankenhauser v. Rizzo, 59 F.R.D. (E.D. Pa. 1979)*........................................10, 11, 12, 13, 17

*Kelly v. City of San Jose, 114 F.R.D. (1987 N.D. Cal.)*........................................12, 14, 15, 17, 18, 19

*Crawford v. Dominic, 469 F. (E.D. Pa.1979)*........................................13

*Culp v. Devline, 78 F.R. D.* ........................................13

*Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal., 511 F.2d (9th Cir. 1971)*........................................14, 17

*Buchannan v. Las Vegas Metro Police Dep't., 2012 U.S. LEXIS 85144*........................................14

*Rogers v. G.J. Giurbino, 288 F.R.D. 469, at 481(2012 S.D. Ca.)*........................................15

*Miller v. Panucci, 141 F.R.D. 292 (1992 CD Cal.)*........................................15

*Bryant v. T. Armstrong, 285 F.R.D. 596 (2012 S.D. Cal.)*........................................16

*Hampton v. City of San Diego, 147 F.R.D.*........................................17

*Macias v. City of Clovis, Case: 1:13-cv-0189-BAM*........................................19, 20

*Williams v. City of Alameda, 2013 U.S. Dist. Lexis, 2013 WL 4608473 (N.D. Cal. 2013)*......19

## 1. PLAINTIFFS INTRODUCTORY STATEMENT AND SPECIFICATION OF ISSUES IN DISPUTE.

### A. Introduction:

This lawsuit arises out of the fatal shooting of Dylan Noble by Fresno Police officers RAYMOND CAMACHO and ROBERT CHAVEZ on June 25, 2016.

The shooting was captured by cell phone video and on police body camera video. The following is based on the witness video, limited police body cam video that the City released to the media, and statements made during various interviews and news conferences called and conducted by Fresno Police Chief Dyer:

On the afternoon of June 25, 2016 employees of the City received information that originated from a 911 call about an individual dressed in a long sleeve shirt and camouflage jacket walking in the area of Clovis and Clinton Avenues carrying a rifle or shotgun. Fresno police officers were dispatched to investigate. The units involved in the investigation/search for said pedestrian included a K-9 unit. When the police officers searched the location and surrounding locations, some units drove east on Clinton, north on Argyle and then east on Shields. On eastbound Shields while stopped at a red light at the intersection of Sunnyside Avenue, officer Camacho observed a truck making a left turn from southbound Sunnyside onto eastbound Shields. At the intersection of Shields and Fowler Avenues, the truck stopped for a red light and officer Camacho stopped directly behind him. While stopped at the red light, officer Camacho and his partner learned from dispatch that the truck was registered to Dylan Noble of Clovis and there were no wants or warrants for Dylan Noble.

After the light turned green, while travelling eastbound on Shields, officer Camacho (or his partner) activated their cruiser lights and siren. About eight (8) seconds later, officer Camacho can be seen on body cam video apparently going for his gun. About fifteen (15) seconds later he pointed it at Dylan's truck while driving behind him. Signs posted on the right side of the road between Fowler and Armstrong read: "No Stopping at Any Time." Dylan continued on Shields at an ordinary speed for about a half mile before turning into the parking lot of a Chevron gas station/mini mart at Armstrong Avenue. After Dylan Noble stopped, and while still in his truck, officer Camacho and his partner got out and pointed their guns at Dylan. A K9 unit also stopped as Dylan remained in his truck. At no time was the dog ever taken out of the police vehicle. As officer Camacho and his partner had their guns pointed at Dylan, officer Chavez pulled up, got out of his vehicle and pointed a shotgun at Dylan. When Dylan exited his vehicle, he initially walked

away from officers (who left their positions of cover) and later turned and walked toward the officers. At that time, almost two minutes after the traffic stop, and from approximately 10 to 15 feet away, officer Camacho fired two pistol rounds in rapid succession at Dylan Noble, hitting him in the upper body. Dylan collapsed forward onto the parking lot and rolled over onto his back. Approximately twelve (12) seconds after the first shots and while Dylan was laying bleeding on the ground, on his back, officer Camacho shot Dylan Noble again with his pistol. Dylan lay bleeding and injured on his back in the exact same spot when, approximately fifteen (15) seconds later, officer Chavez shot him with a shotgun from just a few feet away.

Dylan wore a short sleeve shirt and had no camouflage jacket/clothing on. Dylan was not a pedestrian. Dylan did not match the description of the person they were pursuing. Dylan Noble was unarmed. Dylan was not engaged in any felonious activity.

The officers never had an objectively reasonable basis to shoot Dylan Noble. At no time did they use or attempt to us their K-9 at the scene. At no time did they use or attempt to use a TASER. At no time did they use or attempt to use OC Spray. At no time did they use or attempt to use anything but deadly force.

As a result of the multiple gun shots and shotgun blast, Dylan Noble suffered painful and severe injuries. Dylan was taken by ambulance to Fresno Community Hospital where he was pronounced dead later that day.

Plaintiffs allege and have made claims against Defendants City OF FRESNO and Fresno Police Officers RAYMOND CAMACHO and ROBERT CHAVEZ for violation of the Fourth and Fourteenth Amendments to the U.S. Constitution; Municipal Liability for Unconstitutional Custom, Practice or Policy (42 U.S.C. § 1983) (Monell); Conspiracy, Battery, Negligence, Wrongful Death and Intentional Infliction of Emotional Distress; Survivor; and Violation of Bane Act (California Civil Code § 52.1).

**B. <u>Discovery Issues in Dispute</u>**

On April 25, 2017 Plaintiff Nelson express mail-served on the City her first set of Requests for Production of Documents (RFP) and on April 27, 2017 Plaintiff Nelson express mail-served her second set of Requests for Production of Documents (RFP). On May 17, 2017 Plaintiff Noble mail-served on the City his first set of Requests for Production of Documents (RFP). Defendant City provided multiple discovery responses. The first set was served without a privilege log. The second set included a privilege log. The third set of responses was a

consolidated Privilege Log with Objections, but failed to specifically identify any specific document requests from Nelson's Set Two and Noble's Set One. Further, the City's "Amended Privilege Log" failed to correlate correctly by number any Request for Production of Documents from Plaintiff Nelson's Set Two, or any Request from Noble's Set One. The moving parties treat this last iteration of the City's responses as controlling as to the privilege log for Nelson's Set One and for the Declaration in Support of the Confidential Information Privilege only. Plaintiffs have to rely upon the City's first response to Plaintiff Nelson's RFP's, served May 26, 2017, as controlling. Plaintiffs have never received any specific objections to Plaintiff Noble's RFP's.

Plaintiff Nelson's and Plaintiff Noble's RFP's can be broken down into two categories. One category of requests seeks the collection of factual information of the officer involved shooting (OIS) and the events leading up to the actual shooting. This would include witness statements, officer body cams, scene photographs, etc.. It also includes the post shooting factual investigation, e.g. the medical records of Dylan Noble, the autopsy, scene photographs, evidence logs, etc. The second category of requests seeks both the collection of factual evidence and some mixed investigatory matters that may be privileged as to the latter component. As to both categories of documents the City has raised a series of objections and has refused to provide any records without a confidentiality agreement in place and/or placing the documents under seal. Plaintiffs have refused to sign any confidentiality agreement as to Category one type of documents, but have been willing, as to Category two type documents, after review of the purported documents, to agree to confidentiality agreements and to seal those Category two documents as agreed. If an agreement cannot be reached, Plaintiffs agree to keep the records confidential for a period of time to afford the City ample opportunity to move for a protective order.

**C. <u>Category One Documents/Factual Documents:</u>**

Plaintiff Nelson's initial Request for Production of Documents, Set One, contained 69 separate requests which were tailored to mirror verbatim the FRCP Rule 26 Disclosure Statement served by the Defendants. The information sought in each and every request sought factual information collected, recorded or obtained by the City in the investigation of the initial call of a gun toting individual that resulted in the officers reporting to the scene where they eventually encountered Dylan Noble, to the stop, the shooting and the follow-up investigation relating to the shooting. The City raised generally non-meritorious objections as to vagueness, ambiguity,

burden, and oppression to each category of Rule 26 documents they had identified. These objections are so meritless they will not be further addressed.

**i. Initial Dispatch Recording and Body Cam Footage:**

**Plaintiff Nelson's Requests Set One** fall into the following factual categories:

Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12-seek the Dispatch Audio, and the Bodycam CD on Officers William, Reese, Escarno (Clip 7 and Clip 14), Rosario, Meiss, Calormis, Jackson, Cervantes, Camacho, Yang, Camacho (duplicate request). The body cam digital recordings were made by the officers' AXON devices before, during and after the OIS which killed Dylan Noble as identified by Defendants in the Rule 26 Disclosure. Some recordings have been selectively released in many instances to the media by Chief Dyer to justify the shooting during press conferences related to this shooting.

**Plaintiff Nelson's Requests Set 1** stated above, track precisely the Bodycam CD sections referenced by the Defendants in their Rule 26 Statement.

**Plaintiff Noble in his Request Set 1,** asks both for all Rule 26 identified Documents (Request No. 3), but also specifically for Bodycam images related to the events immediately before and after the incident.

**ii. Scene and Evidence Photos and Logs:**

Plaintiff Nelson's Set One requests the following scene or investigative photos: Requests Nos. 14 - Weapons Photos; 15 - Suspect's Vehicle; 16 - Vehicle Processing Photos; 17 - Suspect and Clothing; 18 - Scene Photos; 19 – Officers' Photos as identified in Rule 26 disclosure; 20 - Officers Vehicles; 21 - Evidence and Casings, per Rule 26 disclosure; 22 - Autopsy Photos; 23 - Scene Aerial Photos; 24 - Night Scene Photos.

Plaintiff Noble's Set One request No. 5 asks for any and all photographs, videotapes, or other images and videos, including body cam video, of any place, object or person referencing or referring to the subject incident, the events immediately before and/or the events immediately after the subject incident.

**iii. Witness and Participant Statements:**

As part of the investigation of the OIS, statements of witnesses to the events leading up to and including the shootings, were taken both in written narrative form and in recorded format. All witnesses who gave statements have been identified in Defendants' Rule 26 Disclosure. Therefore, these names are not confidential, having been disclosed.

Plaintiff Nelson's Request No. 27, asked for the report of witness statements of all

percipient witnesses identified in the Rule 26 Disclosure, as did Nos. 29, 30.

**iv. Police Investigation of the OIS**

As part of the police investigation of events leading up to the stop and shooting of Dylan Noble the police completed a routine investigation of the events. The documents relative to this investigation are sought in Plaintiff Nelson's RFP Set One, requests Nos.: 25 (FPD Call Event Report); reports by Officer involved shooting (26); 27, 29, 30 42, 48, 60, 61, 64 (Reports on Witness statements); Report of OIS response by Officer Williams (28); Reports on the Body Cam, Officer Richards (31); Report on Photos by various officers (32, 33, 36, 37 41, 49, 54, 55, 58); Impound Report (34); Autopsy Photos (41), Coroner's Report (56). The remaining requests all entail copies of various aspects of the OIS investigation: 45 (perimeter report); Hospital Order Control (46); Search Warrant Report (50); Crime Scene Log (51); Crime Scene Preservation Report (52); Report of Witness Clark (53); Report Re Shots Fired (57); Report Re Scene Photos (58); Report Re personnel Briefing by Officer Padilla (59); Report re witness Price (60 & 64); Report re suspect (62); Report re latent prints (65); Report re CV of CSI Corless (66); Evidence Property Sheets (67); Search Warrant Return (68); Scene Measurements (69).

The following investigation documents are sought by Plaintiff Noble in his first RFP: No. 4 asks for all statements regarding the events, before and after the OIS; No. 5 asks for all photographs, bodycam footage etc.; No. 6 asks all reports prepared regarding the incident pertaining to the events before, during and after the incident, all reports related to the incident; No. 7 asks for all dispatch audio regarding the incident; No. 8 asks for all evidence developed investigating the incident, No. 10 asks for all documents of Dylan Noble's injuries; No. 12 asks for all criminal records regarding Dylan Noble.

**D. <u>Plaintiff Nelson's Second Request for Production/Factual Information:</u>**

Plaintiff Nelson's RFP set two contained Requests for Production numbers 70-157. The majority of the information requested herein is also factual and unprotected information regarding the OIS.

Request No. 70 seeks hours worked by Defendant Camacho. Request No. 71 seeks hours worked by Defendant Chavez. All documents that establish what non-lethal weapons were available to the on scene officers and Defendant Officers while in their vehicle and after they exited their vehicle [out of vehicle] is sought in Requests 137 (Camacho), 138 (Chavez) 139 (Reserve Officer Chow), 140 (DOE K-9 Officer), [in vehicle] 141 (Camacho), 142 (Chavez), 143

(Reserve Officer Chow), 144 (DOE K-9 Officer). Requests Nos. 148, 153-157 seeks information collected by the City in its investigation of Dylan Noble as follows: 148 his criminal record printout; 154 his medical records and or mental health records; 155 employment records; 156 medical records establishing injuries; 157 school records of decedent.

Additional requests for pictures, videos, coroner's report, etc. all call for factual evidence collected which is not protected. Requests 96 and 102 seek photographs of the scene, of the shooting and persons at the scene, firearms recovered, location of physical evidence, and scene markings. Requests 97-98 seek videos and cell phone videos collected from witnesses, officers, all locations, at shooting scene, before and after. Requests 99-101 seek reports of detectives, criminalist, coroner, shooting, location, casings, scene, coroner reports, and coroner photographs.

**E. <u>The City's Responses Re Factual Information Collected as a result of OIS:</u>**

In response to the Plaintiffs' requests for factual evidence discussed above, the City produced nothing. Not one scintilla of evidence. The City raised the following shotgun, overbroad non-specific objections to the production of any documents, without identifying any specific evidence in its privilege log or the "Amended Privilege Log" served by mail on July 31, 2017 to which the objections would apply. The objections were: "As to all the Dispatch Audio, all Bodycam digital records of the officers, all photos of the scenes, weapons or vehicle involved in the accident as itemized under section I. i and ii, iii, iv., supra herein: federal law enforcement privilege, investigative privilege, the executive-deliberative process and official information privilege". The City then offered to provide the aforementioned requested information only if Plaintiffs signed a blanket stipulation stating that all the records requested were confidential records and would be afforded at all time the status of Protected Material/Confidential Documents that can only be used, upon certain conditions, at trial of this matter.

## 2. THE CITY'S CLAIMS OF PRIVILEGE ARE IMPROPER

The case of *Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1979)* remains today one of the seminal cases dealing with the rights of a Plaintiff in a civil rights case to obtain discovery against a police department. The Court in *Frankenhauser* developed a balancing test as to what materials generated by the police department regarding an OIS case are discoverable. The Court recognized that the police may have some interest in keeping their investigations, the names of witnesses, etc. privileged. However, a Plaintiff, especially in a civil rights action against a police

department, has a significant need to the police investigation of the OIS in order to prove their case. As the court in *Frankenhauser, supra. at 343* noted:

> "[I]t is the manner of enforcement which gives section 1983 its unique importance for enforcement is placed in the hands of the people. Each citizen acts as a private attorney general who 'takes on the mantel of the sovereign,' guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statue be resolved by determination of the truth rather than by a determination that the truth shall remain hidden."

In this vein the privileges asserted by a defendant in a 1983 civil rights action are not absolute. They are to be weighed by a balancing of the interests of the parties with a preference toward the facts and investigation collected by the police being discoverable.

The *Frankenhauser* Court adopted a weighted balancing test for determining whether information contained in the police investigation should be provided to the plaintiff. This balancing test has been fully adopted and expanded upon in the 9th Circuit in the case *Kelly v. City of San Jose, 114 F.R.D. 653, 663 (1987 N.D. Cal.)*, to wit:

> (1) "The extent to which the disclosure will thwart governmental processes by discouraging citizens from giving government information." **[Here, this factor weighs in favor of disclosure, as the witnesses have all been identified by the Defendants in their rule 26 disclosure statements.]**
>
> (2) "The impact upon the persons who have given information of having their identities disclosed." **[This factor also weighs in favor of disclosure in this case, as Defendants have disclosed all witnesses' identities.]**
>
> (3) "The degree be which government self-evaluation and consequent program improvement will chilled by disclosure." **[This factor likewise weighs in favor of disclosure in this case because all information sought in the request part of Subsection I, supra. herein seek factual information collected in investigation of the OIS and does not seek any information part of a deliberative process.]**
>
> (4) "Whether the information sought is factual data or evaluative summary." **[This factor weighs in favor of disclosure here because all the information sought in Part I, supra. herein, is factual data.]**
>
> (5) "Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question." **[Neither Plaintiff Veronica Nelson nor Plaintiff Daren Noble are target defendants of any criminal investigation arising**

**from the OIS. This factor also weighs in favor of disclosure.]**

(6) "Whether the police investigation has been completed." **[This factor weighs in favor of disclosure because the criminal investigation of the Fresno Police Department has been completed. The Federal investigation has for all purposes been completed. Although Subpart I does not seek any internal affairs investigatory material, according to Chief Dyer, the Internal Affairs investigations have been completed.]**

(7) "Whether any intradepartmental disciplinary proceeding have arisen of may arise from the investigation." **[This factor weighs in favor of disclosure because there are no such disciplinary proceedings as to the OIS investigation material being sought in Part I. The documents sought have only to do with the OIS investigation itself and the facts collected related thereto.]**

(8) "Whether the plaintiff's suit is non-frivolous and brought in good faith." **[The Plaintiffs allege that the unconstitutional actions of the Defendants and the culture of the Fresno City Police Department, lead to the death of their son in an OIS and therefore this factor weighs in favor of disclosure.]**

(9) "Whether the information sought is available through other discovery from other sources." **[This factor weighs in favor of disclosure as the factual information sought, the bodycams, witnesses statements, etc. are only available from City and/or the best available evidence such as witness statements taken at our near the time the events were witnessed.]**

(10) "The importance of the information sought to the plaintiff's case." **[There can be no doubt that this factor weighs in favor of disclosure. The factual information concerning the OIS and the investigation related thereto are critical to the Plaintiffs' cases and necessary to evaluate and prove Plaintiffs claims.]**

As explained, all factors weigh in favor of disclosure. The information sought in Part I is all factual information collected as part of the investigation and should be provided to Plaintiffs forthwith with no restrictions on its use. Further, as recognized in *Crawford v. Dominic, 469 F.Supp.260, 263 (E.D. Pa.1979); Culp v. Devline, 78 F.R. D. 136, 139-141,* "the importance of the information sought to the plaintiff's case" is clearly the most important factor of the ten factors cited by *Frankenhauser, supra., et.al.*

The City also asserts (as to the information sought in the Part I, supra Requests herein) the objection of "equally available and undue burden" for Item Nos. 108 (Dylan Noble's Public Facebook), 109 (Dylan Noble's Facebook Account Information), and 110 (Medical Notes from CRMC for Dylan Noble). Each of these requested items have been secured by the City by

subpoena and are in the City's possession. Plaintiffs are entitled to know and inspect whatever documents the City has in its possession, and there is no undue burden in allowing Plaintiffs to do so.

Even stepping outside of the balancing steps noted above, which arguably and in practice apply to all federal privileges, the City has attempted to assert privileges which are wholly inapplicable to the production requests in a civil rights action. The City asserts in its blanket objections a claim of "executive deliberative privilege". As the Ninth Circuit has noted, the executive privilege has little utility in civil rights cases.

> "Courts also must guard against the wholesale uncritical importation into civil rights cases the doctrine developed in cases dealing with "executive privilege"...(T)he executive privilege is inspired, at least in part, by policy consideration that plays little or no role in cases against police officers. At the root of the executive privilege is the concern about preserving a constitutionally appropriate balance and separation of the largely disparate powers of the three branches of government…These high level politically most sensitive concerns **are simply not present in cases where an individual sues members of a local police department…**This is all the more true in a case where a plaintiff alleges that local police officers have violated federal laws, laws written into the federal Constitution in order to protect individuals from abuses of power by state and local governments, including law enforcement agencies"…*Kelly v. City of San Jose, 114 F.R.D. 655, at 658.*

Simply stated, the federal executive-deliberative process objection has no validity or place in a civil rights action against the alleged constitutional denial of Plaintiffs' rights by the City in this matter.

Similarly, the official information privilege is misplaced in a civil rights case of this nature as asserted by the City in regard to section I. The Ninth Circuit has recognized a qualified privilege for official information in the case of *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1971).* This privilege also contains the standard balancing test, but it applies, only **after** the party who seeks the privilege makes *"a substantial threshold showing"* that the official privilege log apply, *Buchannan v. Las Vegas Metro Police Dep't., 2012 U.S. LEXIS 85144, at *3.* To invoke that privilege the defendant has to file a declaration from the Department Head who controls the records that includes the following:

> "(1) an affirmation that the agency generated or collected the material at issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests involved that would be threatened by disclosure of the material to the plaintiff and/or his lawyer; (4) a description how disclosure subject to a carefully crafted protective order would create substantial

> risk of harm to significant governmental interests if disclosure were made." *[Citations omitted] Rogers v. G.J. Giurbino, 288 F.R.D. 469, at 481(2012 S.D. Ca.)*

In all documents requested under Part I, the City has made no showing, by declaration or otherwise, that the official information privilege is applicable to the items requested. While the City did provide the Declaration of Lt. Mindy Castro, lodged with the Court, the Declaration is generic. It does not meet the substantial threshold test of the law. More importantly, the Declaration deals only with the personnel files and internal affairs investigation of the OIS in non-specific terms. Again the threshold requirement, making a substantial showing to invoke even the balancing requirements of a properly raised official information privilege, have not been met as to Item I matters. The official information privilege is inapplicable. The law is clear: when the official information privilege is claimed, but there is no supporting declaration for that privilege in the papers of the claiming party, the privilege should be denied in totality.

> "If the court finds that such submissions are insufficient (to find official privilege), it will order the disclosure of the requested documents *Id.* In other words, should the threshold requirements not appear in the papers, the privilege will be overruled in its entirety and complete disclosure will be ordered. **No en camera inspection will occur."** *Miller v. Panucci, 141 F.R.D. 292, at 301(1992 CD Cal.)*

It is also worth noting that Lt. Castro declares, under penalty of perjury, that materials she reviewed were ones that have nothing to do with this litigation. She declares to have reviewed the materials reference in the City's responses to Nelson's second RFP. Yet the City's response makes reference to many other unrelated cases.

All of the City's claims of federal privileges to Category I document requests should be summarily denied and the requested documents should be ordered provided to Plaintiffs without further delay.

**3. DOCUMENTS WHICH MAY CONTAIN PROTECTED CONTENT**

Plaintiffs recognize that some of the requested documents may contain information that the City may have a legitimate interest in protecting. Plaintiffs have recognized those concerns and have offered to have these mixed categories of information protected to some degree and treated confidentially where appropriate. As stated by the Court in *Kelly v. City of San Jose, 114 F.R.D. supra, at 663-664* disclosing "(1) evaluative comments, recommendations, or findings that appear in files generated by internal affairs investigations, (2) complaints by citizens against police

officers, and (3) manual and memorandum that show how officers are instructed to use force when making arrests" runs a greater risk of harm to significant governmental interests and should be weighed carefully.

The documents requested by Plaintiffs which are arguably subject to additional weighing and concerns fall into the following categories:

**A. Audio Transcripts of Interviews of Officers:**

Various officers involved in the OIS, both before and after the event, and in the actual shooting, were interviewed. The Defendant shooting officers were the subject of video interviews which were transcribed and kept in video and audio formats, as to the transcription: Officer Chavez - Request No. 72, Officer Camacho - Request No. 73, video interviews of the same officers, respectively and audio interviews respectively are found at RFP nos. 84 and 85. Various officers who were at the scene of the shooting both before, during and after the shooting who are not target Defendants also gave video interviews. These were recorded by audio and transcribed as well. These are subject of Requests Nos. 74-81 and 86-94 for the transcribed and video interviews of Officers Chow, Badilla, Cervantes, Price, Vanzant, Sturgeon, Doe K-9 Officer, and unknown County Sheriff. All of those were involved in or related to the OIS. Transcripts of Defendant Officers Camacho and Chavez are requested in Nos. 147-148.

**B. Defense Objections:**

The City raises the standard privilege claims as it does to the requests it raises in Part I. It is the same shotgun federal law enforcement investigative privilege, the executive-deliberative privilege process and the official information privilege. With the exception of the official information privilege as will be discussed, all the shotgun federal privileges fail. Officers Chavez and Camacho were targets of the OIS investigation since they were the actual shooting officers who killed Dylan Noble. The remaining officers interviewed were percipient witnesses.

The City also asserts that, as to the officers' statements, the constitutional right to privacy and various privacy rights as embodied in California Penal Code sections 832.5 through 832.8 as well as Evidence Code sections 10940 through 1048 are applicable. They are not.

First, as to the applicability of *Pitchess,* the California Penal Code and California Evidence Code as to civil rights actions in federal court, the law is clear: they are not applicable. *State privilege law does not govern discovery in federal Section 1983 cases. Bryant v. T. Armstrong,*

*285 F.R.D. 596, at 604 (2012 S.D. Cal.)* In civil rights cases brought under Section 1983 civil rights statutes, the law is clear: federal discovery rules apply, not state rules. *Hampton v. City of San Diego, 147 F.R.D. 227, 228,230; Kerr v. U.S. District Court for the N. Dist. Of Cal. 511 F2d 192, 197 (9th Cir. 1975).* There is recognized in the Ninth Circuit a strong public policy not to follow state privilege law in civil rights cases against police departments.

> "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by the state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims." *Kelly v. City of San Jose, supra, 114 F.R.D. at 656.*

Plaintiffs acknowledge that some comity is to be afforded the assertion of state privacy laws when weighing the privacy rights of the Defendants. However, the privileges that apply are federal privileges and not the state privileges asserted by the City.

As to the percipient witness officers, subject of Section II a., Plaintiffs assert that the threshold requirement to invoke the official information privilege has not been met with the necessary specificity by the Declaration of Lt. Casto. The Declaration simply fails to articulate what government entity will be harmed by providing witness statements.

If the Court finds that Lt. Casto's Declaration meets the threshold requirement to even evaluate the official information privilege as to the percipient witness officers' interviews, the interviews should be provided under a balancing test. The Court in *Kelly v. City of San Jose, supra,* engaged in a thoughtful and detailed analysis of the scope of the official information privilege in police civil rights actions. In the case of the interviews of the percipient officers, there are two components. First, the facts observed by these officers. The investigatory facts observed by the officers are clearly discoverable. *See e.g. Frankenhauser, supra, 5a F.R.D. 339.* Second, the officers' opinions as stated in their interviews as to the propriety of the conduct of involved officers (or the OIS shooting in general) as it may relate to the internal affairs investigation. As noted in *Kelly, supra,* rather than chilling the honesty and candid testimony of officers whose statements may be part of an internal affairs probe, the exposure of those statements in a civil rights action will in all probability have the opposite effect. Thus, balancing leans toward full disclosure of the investigation, at least of the responding percipient officers:

> "A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel

> the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible, An officer might expect that someone within his organization would be less exacting in reviewing his statements or reports than someone from the outside, especially if the person from outside already has substantial information about the incident under investigation and has a strong motive to challenge the accuracy of the officer's memory or the reliability of his conclusions. We rely in our adversary system of justice on the fear of being challenged and exposed by an opponent to keep litigants and lawyers honest...Fear of scrutiny by knowledgeable people motivated to be aggressive is likely to inspire police officers to make them less vulnerable to criticism, and the way to make them less vulnerable is to make them more thorough, more accurate and better reasoned. In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e. a civil rights plaintiff and her lawyer)." *Kelly, supra, 114 F.R.D. at 666.*

It is the Plaintiffs' position that, as to the percipient officers whose statements were taken and who were interviewed, their statements are not covered by any privilege as asserted by the City. If this Court finds the City, however tenuously, has met the threshold requirement to have the official information privilege applied to the percipient officers' statements, the disinfecting light of litigation, per *Kelly, supra, 114 F.R.D. 653* tilts the balance in favor of full disclosure.

**C. <u>Defendant Officers Chavez and Camacho:</u>**

Requests No. 72 and 73 request transcribed statements of officers Chavez and Camacho. Requests 84-85 seek the video statements of these officers. Plaintiffs recognize that the threshold requirement of the official information privilege has arguably been met with respect to these requests. Given that the Defendant officers are targets of this litigation and targets of an Internal Affairs investigation relating to the shooting, it is reasonable to suspect that the investigation of these officers and the OIS included issues of training, prior discipline, prior complaints and conduct and would have engaged the officers in a greater level of scrutiny.

Keeping in mind that all parties have a duty of good faith and full disclosure in discovery matters, Plaintiffs have offered to allow the City to mark the investigation interviews regarding the Defendant officers in all areas they believe should be treated as confidential, and the Plaintiffs would in good faith review the City's position within twelve days of receipt of the records and would stipulate, if in agreement, that the matters should be confidential. If the parties could not reach an agreement, the Plaintiffs would hold the matters private and confidential to afford the

City an opportunity to allow the Court to review the records en camera and make a ruling on the records' confidentiality. The City has not accepted our offer. Our offer was placed in a stipulation and order format which has been lodged with this Court. Plaintiffs remain willing to discuss a well-crafted protective order regarding the internal affairs investigation's files and interviews of the Defendant officers. Counsel for the City has simply continued its stonewalling refusal to provide any discovery in this matter or to agree to a limited well-crafted protective order.

To determine if the official information should prevent the disclosure of the interviews of Defendant officers the courts have routinely applied the *Kelly v. San Jose, supra, 114 F.R.D. 653* test in Section 1983 Civil Rights actions. In that case the Court balanced the competing needs of societal interests, law enforcement interests and the interests of the police officers and ordered production of all materials relating to police practices, as well as the internal affairs records of the officers involved.

Plaintiffs acknowledge that, arguably, a portion of the Defendant officers' interviews, as well as their personnel files and internal affairs investigation file, both for this events and other similar excessive force and OIS events may qualify for some level of protection for the officers in terms of a protective order limiting the use of this information to the subject litigation.

As this Court noted in *Macias v. City of Clovis, Case: 1:13-cv-0189-BAM. Document 67, page11,* the case of *Williams v. City of Alameda, 2013 U.S. Dist. Lexis, 2013 WL 4608473, at *2(N.D. Cal. 2013)* is instructive. The Court in that case ordered the Alameda County Sherriff to produce internal affairs documents of the named officers. While the right of the officers to some degree of confidentiality in the internal affairs and personnel files did exist, the need for the plaintiff to know in a civil rights case outweighed the need of the police to keep the information from discovery. Citing favorably from *Kelly, supra, 114 F.R.D. 653,* this Court in *Macias* noted, that *Kelly* holds:

> "As a general proposition, the public interest in the categories favoring disclosure (the policies underlying the civil rights laws, public confidence in the court system, and doing justice in individual cases) clearly outweighs the public interests in favor of secrecy (e.g. not compromising procedures of self-discipline within the police forces or the privacy right of officers or citizen complainants). There is substantial exaggeration of the size of harm that limited disclosure might do to concededly legitimate law enforcement interests." [Page 11 of the Court's order.]

In summary, the interviews of the Defendant officers arguably qualify for the official information privilege, but only if this Court believes the threshold was met by the declaration of

Lt. Casto. The Plaintiffs have offered and believe the appropriate manner to deal with the issues of confidentiality of these interviews is to have that information provided to Plaintiffs in totality, with areas of confidentiality highlighted, and if the parties cannot agree on the confidentiality then place the matter before the Court in an en camera hearing for direction.

Further, for the reasons stated in and articulated by this Court in *Macias,* the internal affairs files of Defendants Camacho (Request No. 118), and Chavez (No. 119), as well as the investigations related to the OIS by Defendants Camacho and Chavez by the District Attorney's office, the California Attorney General's Office, or the FBI (Nos. 120-121), should be provided with a proper protective order. This applies as well to all investigations of Defendant Camacho and Chavez for excessive use of force (Nos. 122-123), the disciplinary files of officers Camacho and Chavez as it relates to use of force discipline (Nos. 126-127), and the personnel files of officers Camacho and Chavez (Nos. 128-139).

### D. Remaining Request for Production of Documents Which Plaintiffs Concede a Protective Order and Confidentiality Agreement Is Or May Be Warranted:

Plaintiffs have repeatedly offered to enter into a Confidentiality Agreement and Protective Order where appropriate. The problem with agreeing to do this on a blanket basis is that Plaintiffs have lost faith in the City's good faith in making reasonable discovery. The City's total refusal to provide discovery, to claim all documents requested were covered by clearly inapplicable privileges, have led to this conclusion. Further, upon review of files in this District where the law firm hired by the City has been involved in civil rights actions against the City, there is a clear pattern of stonewalling.

Plaintiffs have sought the following Policy and Procedures manual information in effect on the date of the shooting: 104-Use of Force Policies regarding less than Deadly Force: or "less than lethal" force; 105-Polcies and Procedures regarding "Felony Stop"; 106-Policies regarding "Canine Unit"; 107-Policies referenced by Chief Dyer regarding use of Canine Unit as referenced by Chief Dyer in his July 13, 2016 press conference; 108-Polcies regarding Canine use in effect for a ten year period before the shooting, again referenced by Chief Dyer in his December 9, 2016 press conference; 109-Reasonable use of force policies, including any discussion of the case cited by Chief Dyer in his December press conference as *Graham v. Conner*; 110-Training Bulletins regarding use of force procedure and use of deadly firearms existing at time of shooting; 111-Bean bag use, TASER use, OC spray, and less than lethal force in use on date of shooting; 112-training

bulletins regarding Felony Stop Procedures, foot pursuit, reasonable suspicion stops and probable cause stops as of June 25, 2016; 113-Department firearms policies including use in existence on date of incident. Plaintiffs recognize these policy and procedure manuals may need a protective order if Defendants can show good cause why dissemination of this information will negatively impact law enforcement capabilities.

In response to Plaintiff Noble's RFPs set one, the City has produced sixteen (16) pages from a few select City police department Officer Training Manual. They are as follows: Fresno Police Department Policy Manual "Policy 300" "Use of Force" FPD 000001-000003; Fresno Police Department Policy Manual "Policy 308" "Force Options" FPD 000004-000005; Fresno Police Department Policy Manual "Policy 312" "Firearms" FPD 000006-000007; Fresno Police Department Manual "Policy 321" "Policy Manual" FPD 000008-000009; Fresno Police Department Manual "Policy 500" "Traffic Function and Responsibility" FPD 000010-000011; Fresno Police Department Manual "Policy 318" "Canine Program" FPD 000034; Fresno Police Department Manual "Policy 310" "OIS" FPD 000050-52; and Fresno Police Department Manual "Policy 309" "Electronic Control Devises (ECD) FPD 000056.

In response to Plaintiff Nelson's RFPs sets one and two, the City has produced eleven (11) pages from a few select City police department Officer Training Manual. They are as follows: Fresno Police Department Policy Manual "Policy 300" "Use of Force" FPD 000001-000003; Fresno Police Department Policy Manual "Policy 308" "Force Options" FPD 000004-000005; Fresno Police Department Policy Manual "Policy 312" "Firearms" FPD 000006-000007; Fresno Police Department Manual "Policy 321" "Policy Manual" FPD 000008-000009; Fresno Police Department Manual "Policy 500" "Traffic Function and Responsibility" FPD 000010-000011.

**E. <u>Withdrawn Production Requests:</u>**

Plaintiff Nelson's Second Set of Production Requests seeks limited contention discovery. Set Two Request Numbers 133, 134, 135, 136. Given the nascent stage of discovery, Plaintiff Nelson will not seek this Court's intervention regarding these requests at this time. This may be refined and promulgated later. Similarly requests number 150 and 151 for all settlement agreements concerning the Defendant officers for past tort claims is not being pursued by this motion. Requests 114 and 115 (as to claims filed with the City regarding the Defendant officers) are also not being pursued by this motion. Requests number 124 and 125 are being withdrawn as being arguably vague, ambiguous and overbroad and burdensome and oppressive as written and

will be submitted in a more concise format.

**F. Press Release Information/Chief Dyer:**

During the pendency of this action, Chief Dyer has given multiple media interviews and press conferences. At those events the Chief has made multiple claims which Plaintiffs believe may be unsupported by the facts. To explore that belief, Plaintiff Nelson has asked for specific documents that may or may not exist to support Chief Dyer's public assertions. To wit: All documents which support the claim made on June 25, 2016, that the policy of the Department was not to utilize a K-9 unit when a suspect may be armed (No. 107); All documents supporting his December 9, 2016 press conference claim that the Department reviewed its canine policies to make sure it was consistent with nationally accepted best practices (No. 108); copy of all use of force policies referred to by Dyer in his December press conference when he cited *Graham v. Conner*, reasonable force guidelines were followed (No. 109); copies of all documents that support Chief Dyer's December press conference statement that all four rounds fired into Dylan Noble were within department policy (No. 134); all documents supporting the qualification by Chief Dyer that the third and fourth rounds involved "inappropriate tactics" (No. 135); all documents that support other potential alternatives may have been utilized between the third and fourth rounds fired a Dylan Noble, as referenced by Chief Dyer in his December 9, 2016 press conference (No. 136); all documents, including training, which support Chief Dyer's claim in his December press conference that the officers attempted to de-escalate the situation with Dylan Noble and Dylan Noble failed to comply (No. 145).

It is Plaintiffs' belief that many if not all of Chief Dyer's press conference assertions are at a minimum misleading and potentially intentionally untrue. Therefore the requested documentation is important in viewing the propriety of the Defendants' conduct in this case and potentially providing a source of impeachment.

## CONCLUSION

The discovery dispute before this Court is a matter of great significance. And not just to this litigation. And not just to these parents whose unarmed teenage son was killed following a traffic stop. It is of great significance to the community at large. It puts before this Court claims by the City of Fresno that its police department has the right to withhold information that is vital to the Constitutional rights of its citizens. The fact that other plaintiffs in previous claims of

excessive force have given in to the City's demands should not act as precedence that all must bow to those demands. The United States Constitution provides safeguards for all citizens against governmental abuse of power. These Plaintiffs ask this Court to affirm that the Constitutional rights of these Plaintiffs must prevail over the secrecy demands being made by the City. Plaintiffs respectfully request that this motion be granted.

DATED: September 29, 2017

Respectfully submitted,

BARADAT & PABOOJIAN, INC.

By: ______________________________

Adam B. Stirrup, Esq., Attorneys for Plaintiff, DARREN NOBLE

DATED: September 29, 2017

Respectfully submitted,

STUART R. CHANDLER APC

By: ______________________________

Stuart R. Chandler, Esq., Attorney for Plaintiff, VERONICA NELSON