# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN NOBLE, individually, and on behalf of Decedent, DYLAN NOBLE, as Successor-in-Interest to the Estate of Dylan Noble,<br><br>Plaintiff,<br>v.<br><br>CITY OF FRESNO, and the CITY OF FRESNO POLICE DEPARTMENT, RAYMOND CAMACHO, ROBERT CHAVEZ, and DOES 1 through 50,<br><br>Defendants. | Case No. 1:16-cv-01690 DAD-BAM<br><br>ORDER GRANTING PLAINTIFFS' JOINT MOTION TO COMPEL IN PART AND ORDERING PRODUCTION OF CERTAIN WITHHELD DOCUMENTS PURSUANT TO A PROTECTIVE ORDER<br><br>ORDER SETTING STATUS CONFERENCE RE: PROTECTIVE ORDER FOR DECEMBER 15, 2017 at 10:00 A.M.<br><br>(Doc. 29) |
| VERONICA NELSON, individually, and on behalf of Decedent, DYLAN NOBLE<br><br>Plaintiff,<br>v.<br><br>CITY OF FRESNO, and the CITY OF FRESNO POLICE DEPARTMENT, RAYMOND CAMACHO, ROBERT CHAVEZ, and DOES 1 through 50,<br><br>Defendants. | |

Currently before the Court is Plaintiffs Darren Noble and Veronica Nelson's ("Plaintiffs") Joint Motion to Compel Defendants City of Fresno, Officer Raymond Camacho and Officer Robert Chavez ("Defendants" or "the City") to produce documents in response to numerous Requests for Production. (Doc. 29). On October 25, 2017, Defendants filed an opposition to the Motion to which Plaintiffs filed a reply on November 3, 2017. (Docs. 33, 34). The Court heard

oral argument on November 16, 2017. Counsel Adam Stirrup, Warren Paboojian, and Stuart Chandler appeared in person on behalf of Plaintiffs. Counsel Mildred O'Linn and Lynn Carpenter appeared by telephone on behalf of Defendants. Having considered the moving, opposition, and reply papers, arguments presented at the November 16, 2017 hearing, as well as the Court's file, the Court issues the following order.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiffs are proceeding in this civil rights action against the City of Fresno, Officer Raymond Camacho and Officer Robert Chavez on claims under 42 U.S.C. §1983 for violation of the Fourth and Fourteenth Amendments to the U.S. Constitution; a *Monell* claim for Municipal Liability for Unconstitutional Custom, Practice or Policy; Conspiracy, Battery, Negligence, Wrongful Death and Intentional Infliction of Emotional Distress; and Violation of California Civil Code § 52.1.

The facts of this case arise out of the officer-involved fatal shooting of Dylan Noble ("Mr. Noble" or "the decedent") by Fresno Police Department ("FPD") officers Raymond Camacho and Robert Chavez.[1] According to Plaintiffs' complaint, on the afternoon of June 25, 2016, employees of the City received a 911 call about an individual walking in the area of Clovis and Clinton Avenues carrying a rifle or shotgun. In response to the report of an armed suspect, Fresno police officers were dispatched to investigate the area.

After a search, Fresno police officers saw Dylan Noble's truck make a left turn and conducted a traffic stop. When Mr. Noble exited his vehicle, and despite officers' commands that he stop, Mr. Noble turned and began walking away from, then towards, the officers. Officer Camacho then fired two pistol rounds in rapid succession at Mr. Noble, hitting him in the upper body. Mr. Noble collapsed and was later shot again by both Officer Camacho and Officer Chavez. Mr. Noble was taken by ambulance to the Fresno Community Hospital where he was pronounced dead later that day.

---

[1] The parties' explanations of the events that occurred on the day of the shooting vary greatly. The summary here is presented in the light most favorable to Plaintiffs, but is detailed strictly for narrative purposes with no binding effect on the merits of this case.

### B. Procedural Background of the Parties' Discovery Dispute

An initial scheduling conference Order was issued on February 10, 2017, setting forth the discovery and trial schedule for the case. (Doc. 11). Shortly after discovery commenced, the parties exchanged initial disclosures on March 10, 2017. On April 25, 2017 and May 17, 2017, Plaintiffs served their first set of Requests for Production of Documents. Defendants initially objected to the production of the majority of documents, absent a protective order, arguing that the information sought is protected by various privileges including privacy, ongoing federal law enforcement investigation, official information, deliberative process, and attorney-client. Despite objecting on multiple privilege grounds, Defendants offered to produce these "otherwise-privileged" documents provided Plaintiffs would agree to a protective order that bars publication and restricts the use of such records to court litigation in this case.

Plaintiffs rejected this offer and refused to sign any confidentiality agreement as to the factual incident related discovery, but expressed a willingness to fashion a narrowly tailored protective order limiting the use of certain officer personnel information and training information.

After exhaustive efforts to reach a final resolution, including an informal discovery conference regarding the subject dispute on September 1, 2017, the parties remained at an impasse resulting in the motion to compel presently before the Court.

### C. Summary of the Documents at Issue

The parties' briefs on this discovery dispute discuss the documents at issue in terms of "categories" of documents. The Court adopts the categories of documents identified by Defendants in their opposition brief and later referenced by Plaintiffs' in their reply brief. (Doc. 33 at 8-11); (Doc. 34). As stated by Defendants, the disputed categories of document requests can be broken down into five categories as follows.

#### i. Category 1

Plaintiffs seek factual incident related documents detailing the facts underlying the officer-involved shooting of Mr. Noble. Broadly, Category 1 includes basic police reports, 911 recordings, initial dispatch recordings, body-cam footage, photos, witness interviews/statements, and recordings.

Defendants assert that the Category 1 information is protected under the ongoing law

enforcement investigative privilege and official information privilege (and for some portions, the federal deliberative process privilege).

### ii. Category 2

Plaintiffs seek records regarding the Fresno Police Department's ("FPD") policies, practices, and training procedures. In response, Defendants produced 18 pages of responsive policies but objected to the production of the remaining material as privileged—absent a protective order—based on the official information privilege.

### iii. Category 3

Plaintiffs seek non-incident records including the entirety of the officer personnel files for defendant officers Chavez and Camacho. Included in Plaintiffs' requests for the personnel files are non-incident complaints/investigations and related documents regarding non-incident uses of force; and other employment related materials. As indicated in their Privilege Logs, Defendants refuse production of these documents as protected under federal privacy and official information privileges.

### iv. Category 4

Plaintiffs seek records regarding Dylan Noble's prior pre-incident police history. Specifically, any non-incident contacts between Dylan Noble and the FPD including criminal history records predating the shooting. In response, Defendants contend that they are unsure whether this information exists. However, Defendants agree to review their records and supplement their discovery responses with any existing reports.[2]

### v. Category 5

In the final category of documents, Plaintiffs seek information generated by non-parties, and/or non-police records associated with Mr. Noble including but not limited to the decedent's school records, employment records, medical records, autopsy reports, vehicle documentation, facebook.com account information, and medical notes.

Defendants refuse production of this category of documents because this information is equally available to Plaintiffs through other means.

---

[2] At the hearing, the parties agreed to withdraw this request as premature. Counsel will meet and confer to discuss whether these documents exist. If those items exist, Defendants agree to produce that information without waiving any objections that may arise.

4

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.* A court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The party moving to compel bears the burden of demonstrating why the information sought is relevant and why the responding party's objections lack merit." *Bluestone Innovations LLC v. LG Elecs. Inc.*, No. C-13-01770 SI (EDL), 2013 U.S. Dist. LEXIS 171861, 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013). In addition, "[r]elevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case." *Centeno v. City of Fresno*, No. 1:16-CV-653 DAD SAB, 2016 U.S. Dist. LEXIS 180013, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016) (*citing In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

Rule 37(a)(1) permits a party to move for an order compelling discovery, upon certification that the movant has in good faith conferred or attempted to confer with the opposing party in an effort to obtain the requested discovery without court action. Fed. R. Civ. P. 37(a)(1).

## DISCUSSION

Plaintiffs' motion to compel involves approximately 157 document requests that Defendants reject based on some applicable, and some otherwise blanket, assertions of federal privileges. However, the heart of this discovery dispute concerns whether the law enforcement

investigation privilege and/or the official information privilege bars disclosure of Plaintiffs' requests for production of: (1) incident-related factual information (Category 1); (2) police practices and procedures (Category 2); and (3) defendant officers' personnel files (Category 3). Therefore, the Court need not trudge tediously through every individual request for production in dispute. Rather, a broad resolution of whether the contested privileges apply to the facts and circumstances of this case and/or whether a protective order is necessary will resolve the discovery dispute.

**1. Defendants Claims of Privilege for the Category 1 Documents are Improper**

    **A. Plaintiffs' Category 1 Documents**

Plaintiffs' Category 1 documents, which broadly include all incident-related factual data, can be classified in two ways. The first classification which the Court labels the "objective factual information" includes: pre-incident and post-incident police reports, initial 911 calls, dispatch audio communicated to officers, body-cam video from several officers, videos taken by officers and witnesses, photographs taken by officers and witnesses including pictures of the scene, the suspect, the suspect's vehicle, weapons, clothing, the officers vehicles; aerial shots, and autopsy pictures; evidence logs, evidence property sheets, casings and ballistic evidence, hospital and ambulance transport records, the coroner's report, crime scene logs, call event reports, toxicology reports, the search warrant report, the search warrant return, impound reports, perimeter reports, crime scene preservation reports, shots-fired reports, and other items directly related to the scene of the shooting. The second classification which the Court labels "subjective factual information" includes statements provided by officers and witnesses at the scene, audio and/or video witness interviews and transcripts, and interviews of individuals who interacted with the decedent shortly before the shooting.

    **B. Defendants' Assertions of Privilege**

        **i. Official Information Privilege**

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991). Police departments may assert this

privilege "to shield internal affairs documents from discovery." *Soto v. City of Concord*, 162 F.R.D. 603, 615 (N.D. Cal. 1995). The official information privilege is subject to the competing interests of the requesting party, and is "subject to disclosure especially where protective measures are taken." *Kerr v. United States District Court, Northern District of California*, 511 F.2d 192, 198 (9th Cir. 1975)). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Martin v. Evans*, 2012 U.S. Dist. LEXIS 71974, 2012 WL 1894219, at *2 (N.D. Cal. May 23, 2012) (*quoting Soto*, 162 F.R.D. at 613). Where, as here, the case involves a civil rights claim against a police department, "this balancing approach should be 'moderately pre-weighted in favor of disclosure." *Soto*, 162 F.R.D. at 613 (*quoting Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987)); *see also Doe v. Gill*, 2012 U.S. Dist. LEXIS 42159, 2012 WL 1038655, at *4 (N.D. Cal. Mar. 27, 2012) ("Current case law suggests the privacy interests police officers have in their records do not outweigh a plaintiff's interests in civil rights cases." (collecting cases)).

Before a court balances these interests, the party opposing disclosure must first make a substantial threshold showing that the official information privilege applies, by "submitting, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Kelly*, 114 F.R.D. at 669. The affidavit must include:

> "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Kelly*, 114 F.R.D. at 670.

Although not required, "the agency's affidavit will contribute more to its goal of protecting the documents in question if the affidavit also describes how plaintiff could acquire, without undue economic burden, information of equivalent value from other sources." *Id.* Further, a

7

general claim that the police department's internal investigatory system would be harmed by disclosure is not enough to satisfy the threshold to invoke the privilege. *Soto*, 162 F.R.D. at 615.

If the court finds that a defendant's submissions do not meet the threshold burden, the court will order defendant to disclose the material. *Kelly*, 114 F.R.D. at 671. If the court finds that defendant has met the threshold requirements to invoke the official information privilege, then the court orders an in camera review of the documents at issue. *Id.*

### ii. Ongoing Law Enforcement Investigation Privilege

Similarly, the ongoing law enforcement investigation privilege is based on the harm to law enforcement efforts which might arise from public disclosure of investigatory files.[3] *Tuite v. Henry,* 181 F.R.D. 175, 176-177 (D. D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999); *accord Shelley v. County of San Joaquin*, 2015 U.S. Dist. LEXIS 58285, 2015 WL 2082370 (E.D. Cal. May 4, 2015) (holding that the investigative privilege barred public disclosure because such disclosure "plausibly could undermine these investigations"). The party claiming the privilege has the burden to establish its existence. *Shelley*, 2015 WL 2082370, at *7.

In order to assert the law enforcement investigation privilege, the party asserting the privilege must again make a substantial threshold showing by meeting certain elements including: (1) asserting a formal claim of privilege by the head of the department with control over the requested information; (2) the assertion of the privilege must be based on personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation as to why it falls within the scope of the privilege. *See Conan v. City of Fontana*, 2017 U.S. Dist. LEXIS 167897, 2017 WL 2874623 (C.D. Cal. July 5, 2017).

### iii. Privacy Rights

Defendants also contend that disclosure of the requested documents would constitute an invasion of privacy. Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. *Soto*, 162 F.R.D. at 616. The party or person

---

[3] "The purpose of the law enforcement privilege is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *S.E.C. v. Gowrish*, No. 09-5883, 2010 U.S. Dist. LEXIS 55099, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) (Judge Susan Illston) (*quoting In re Dep't of Inv. of City of N.Y.*, 856 F.2d 481, 484 (2d Cir.1988)).

whose privacy is affected may either object to the discovery request or seek a protective order. *Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987). Resolution of a privacy objection or request for a protective order requires a balancing of the need for the information sought against the privacy right asserted. *Soto,* 162 F.R.D. at 616. A carefully drafted protective order could minimize the impact of the required disclosure. *Id.*; *Kelly v. City of San Jose*, 114 F.R.D. at 662, 666.

Regarding the disclosure of police files, courts have recognized that privacy rights are not inconsequential. *Kelly*, 114 F.R.D. at 660. However, these privacy interests must be balanced against the great weight afforded plaintiffs in civil rights cases against police departments. "[T]hrough constitutional amendment and national legislation the people have made it clear that the policies that inform federal civil rights laws are profoundly important." *Kelly*, 114 F.R.D. at 660 (citations omitted). In addition, Defendants' privacy concerns may be sufficiently protected with the use of a "tightly drawn" protective order which specifies that only the Plaintiff, his counsel, and his experts may have access to the material, and that copies of such material will be returned to Defendants at the conclusion of the case. *Id.* at 662, 666, 671.

### C. Defendants' Declaration Supporting the Official Information and Ongoing Law Enforcement Investigation Privileges

Defendants offer the declaration of Lieutenant Mindy Casto, who is the commander of the Internal Affairs ("IA") Division with the Fresno Police Department, in support of Defendants' privilege claims. *See* Declaration of Lt. Mindy Casto ("Casto Decl.") ¶ 23, Ex. L, (Doc. 33-13). Lt. Casto explains that she is responsible for overseeing internal investigations regarding complaints against Fresno Police Department officers. Casto Decl. ¶ 2. Lt. Casto also maintains the confidentiality of the IA investigation file portions of officer personnel files. Casto Decl. ¶ 2. She further explains, in detail, how personnel files are generated and maintained and that she has reviewed the information sought by Plaintiffs in this action. Casto Decl. ¶¶ 4-7, 10. Therefore, Lt. Casto is an appropriate person to author the declaration for the official information and ongoing investigative privileges. *Kelly*, 114 F.R.D. at 669.

Lt. Casto describes the governmental interests that would be threatened by disclosure of the

"Department's personnel files and/or internal affairs/investigative records as identified by defendants" to the public. Casto Decl. ¶ 15. Specifically, disclosure of "Internal Affair investigation files or personnel files would interfere with the Department's ability to obtain witness statements." Casto Decl. ¶ 17. She also declares that disclosure of "personnel files and/or Internal Affairs investigation files" may also erode the confidence of civilian witnesses and could affect the "candor of persons" required to provide recorded statements or make evaluations. Casto Decl. ¶¶ 21, 22.

"Specifically with regard to this matter," she further describes that that there are currently two open, incomplete, and ongoing investigations into the Noble shooting: (1) a criminal investigation by the U.S. Federal Bureau of Investigation ("FBI") and (2) a two-phase criminal and administrative investigation by the City. Casto Decl. ¶¶ 1, 23(a). She explains that although the County of Fresno prosecutor has declined to pursue criminal charges against any of the officers at this time, the criminal phase of that investigation has only been completed on a preliminary basis. *Id*. She states that the more in-depth administrative phase of the City's investigation could lead to recommendations that a criminal prosecution be commenced. Further, she has been informed and believes that the basis of the FBI investigation is to determine whether federal criminal charges are warranted against any of the involved officers. Casto Decl. ¶ 23(g).

In her view, disclosing the "investigative documents, records, and information at issue" "to the news media" would (1) substantially impede and interfere with the ability of the FBI and the FPD to complete their investigations, "(2) create a specific safety risk to the witnesses and officers involved—particularly by disclosure-production of officer personal information in the officers entire personnel file; (3) improperly taint the jury pool; and (4) incite the public resulting in additional safety concerns to the officers, witnesses, and public at large." Casto Decl. ¶ 24.

### D. Defendants Have Not Made a Threshold Showing that the Ongoing Investigation Privilege Applies to Protect the Category 1 Documents from Disclosure

Having read Lt. Casto's declaration, the Court is not persuaded that the ongoing investigative privilege applies to the "objective factual information" Plaintiffs seek in its Category 1 documents. In several paragraphs, Lt. Casto details the nature of the open hybrid

10

criminal/civil/administrative investigations. Casto Decl. ¶¶ 15-25. However, she fails to specify how basic police reports, 911 calls, dispatch audio, photos, body-cam videos, and the like, would reveal the types of information likely to thwart an ongoing investigation. Such documents simply do not implicate the sensitive investigative interests necessary to protect an ongoing investigation.

The Court also finds that Defendants' cited out-of-Circuit case fails to support Defendants' argument that all discovery, in the wake of a quasi-criminal investigation, should enjoy a broad exemption from disclosure. *See Tuite v. Henry*, 181 F.R.D 175, 177 (DDC 1998), *aff'd* 340 U.S. App. D.C. 183, 203 F.3d 53 (D.C. Cir 1999), *quoting U. S. v. Nixon*, 418 US 683, 710, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

In *Tuite*, criminal defense attorneys sued Department of Justice ("DOJ") employees for illegally tape recording attorney-client conversations. *Tuite*, 181 F.R.D at 175. They subpoenaed documents from the Office of Professional Responsibility ("OPR") for the Department of Justice regarding its investigation of the matter. *Id.* In balancing the public interest in protecting the investigations against the needs of plaintiffs, the court barred disclosure pursuant to the law enforcement privilege because the final report determined that the investigation into the tape-recording was inconclusive and disclosure would impair the confidentiality on which OPR investigations depend. *Id.* at 181. Of particular importance there, the court noted that a confidential informant had assisted investigators in the case. *Id.* at 179. Moreover, the court concluded that "the public interest in preserving the anonymity of these individuals, whose effectiveness and lives may very well be at risk, is best served by the withholding of any and all identifying information from these reports." *Id.*

The concerns in *Tuite* are not applicable to the Category 1 objective factual information. Unlike *Tuite*, the investigation by the Fresno Police Department does not concern ongoing criminal activity by Plaintiffs or the decedent. Nor are there charges against Plaintiffs, the decedent, or the defendant officers. To the extent that Defendants argue that the possibility of future criminal charges against the individual officers should bar disclosure, the court is also not persuaded. Speculative future criminal charges based on open IA investigations are not entitled to the same protection afforded to ongoing, criminal investigations conducted on the presumption

that the subject has committed a crime. While criminal investigations begin with the premise that a crime was committed and often lead to the filing of criminal charges, the FBI's investigation and the FPD IA investigation are not proceeding with the premise the officers committed a crime and defendant has not so argued. *See Enriquez v. City of Fresno*, 2011 WL 1810443, at * 1 (E.D. Cal. May 9, 2011) (rejecting the broad characterization that ongoing IA investigations that initially involved criminal investigations but did not result in criminal charges should be barred from discovery).

Additionally, while the pendency of a criminal investigation can be a reason for denying discovery of investigative documents, this privilege does not apply indefinitely. The officer-involved shooting here took place well over a year ago and, since that date, the Fresno District Attorney has reviewed the case and decided against pursuing criminal charges. Casto Decl. ¶ 23(b). Defendants have not completed their own internal administrative investigation and are not at liberty to guess when the FBI's investigation will be complete. Casto Decl. ¶¶ 23(f)-(g). Such an indefinite timeframe is unreasonable. Private litigants have certain rights and municipal entities may not retain documents indefinitely and keep them from disclosure on a statement that a self-imposed investigation is still continuing. There must be a reasonable terminus. To hold otherwise would be in conflict with two major federal policies, *i.e.,* the vigorous enforcement of the civil rights statutes and the broadest possible scope of discovery in civil rights litigation.[4] Defendants have therefore not demonstrated that the "objective factual information" in Plaintiffs Category 1 documents is precluded from production based on the ongoing law enforcement investigation privilege.

///

///

---

[4] 42 U.S.C. § 1983 represents a balancing feature in the governmental structure whereby individual citizens are encouraged to "police" those who are charged with policing the populace. *Youngblood v. Gates*, 112 F.R.D. 342 (C.D. Cal. 1985) Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden. *Id.* at 343. Courts construe privileges particularly narrowly in § 1983 claims, "where an assertion of privilege must 'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Id.* at 345.

### E. Defendants Have Not Made a Threshold Showing that the Official Information Privilege Applies to Protect the Category 1 Documents from Disclosure

With respect to the official information privilege, Defendants must properly invoke the privilege by making a "substantial threshold showing," which they have not done here. *Kelly*, 114 F.R.D. at 669. To meet the threshold test for invoking the official information privilege, Defendants supporting declaration "must specifically describe how disclosure of the requested documents in that particular case . . .would be harmful." *Soto*, 162 F.R.D. at 614.

Here, Defendants fail to explain how disclosure of routinely generated objective factual information would cause specific prejudice or harm to the police department or the ongoing investigations. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). Indeed, Lt. Casto's declaration fails to satisfy the threshold requirements in at least two respects. First, the generic statements of concern and harm articulated in Lt. Casto's declaration are the garden variety type typically found insufficient to overcome the moderately weighted presumption in favor of disclosure. *See Kelly*, 114 F.R.D. at 672. For example, the declaration alleges "the records contain analyses and evaluations whose disclosure would likely chill future candor in analysis or evaluation, thereby preventing the Department from obtaining useful information by which it could improve its operations or the performance of its duties." Casto Decl. ¶ 16. As this Court has previously held, general allegations of "harm to candid communications" lacks the requisite specificity needed to overcome disclosure. *See Enriquez v. City of Fresno*, 2011 WL 1810443, at * 11 (E.D. Cal. May 9, 2011), *see also, e.g., Bird v. Mayhew*, 2016 U.S. Dist. LEXIS 11764, 2016 WL 374555, at *6 (E.D. Cal. Feb. 1, 2016) ("Defendant asserts the official information privilege by presenting boilerplate objections that fails to comply with the above requirements."); *Johnson v. Sandy*, 2014 U.S. Dist. LEXIS 129810, 2014 WL 4631642, at *11 (E.D. Cal. Sept. 15, 2014) (rejecting "broad objections and boilerplate claims of confidentiality and policy rights").

Second, Lt. Casto's declaration primarily addresses harms related to the production of personnel files and internal affairs investigation documents with little focus on the harms related to the factual Category 1 documents. This failing weighs in favor of the Court's conclusion that

the Category 1 documents are not generally subject to a privilege. Without more, Defendants have not demonstrated that sufficient reasons exist to preclude disclosure nor have they pointed to any privacy rights that the Court should consider with respect to the incident related "Category 1 objective factual information" documents.[5]

### F. Privacy Reasons Exist to Require the Subjective Factual Category 1 Documents Be Produced Subject to a Protective Order

Unlike the qualified privileges above, Defendants need not make a threshold showing before the Court determines whether there is a bar to discovery based on the right of privacy. Rather, courts balance the need for the information against the claimed privacy right. *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (right of privacy may be invaded for litigation purposes). "When an individual's right of privacy…conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced." *Cook vs. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990) citing with approval *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 315 (1982). "Even where the balance weighs in favor of disclosure of private information ... such an invasion of the right of privacy must be drawn with narrow specificity and [be] permitted only to the extent necessary for a fair resolution of the lawsuit." *Id.* at 552.

While Defendants have failed to demonstrate that the Category 1 documents are protected from disclosure by the ongoing investigation privilege and the official information privilege, the Court is concerned that public disclosure of some of the Category 1 documents infringes on the privacy rights of the witnesses or officers. Given the highly charged environment in which this litigation will proceed, the Court acknowledges that permitting the unrestricted disclosure of all of the Category 1 documents could trigger an untoward invasion of privacy for some witnesses or officers involved with the underlying incident. *Kelly*, 114 F.R.D. at 660 (Courts have recognized

---

[5] At oral argument, the Court expressed concerns about the disclosure of disturbing materials such as autopsy photos or graphic resuscitation efforts. Plaintiffs assured the Court that they do not intend to use the materials obtained during discovery for an improper purpose. The Court accepts Plaintiffs' assurances as made on the record and further reminds counsel that the purpose of discovery ordered here is to facilitate the orderly preparation for trial and not to titillate or incite the public. *See Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2015 WL 7282841, 2015 U.S. Dist. LEXIS 156106 (E.D. Cal. Nov. 18, 2015).

14

that the privacy rights regarding the disclosure of officer personnel files is not inconsequential). It is the privacy rights of these officers and witnesses that concern the Court.

In balancing, the Court finds that even though the balance weighs in favor of disclosing all of the Category 1 information, the disclosure of the "subjective factual information"—including witness statements, witness impressions or conclusions, and other similar information including information likely to identify witnesses and non-defendant officers—must be done pursuant to a protective order to safeguard non-defendant officers and witnesses against any untoward privacy intrusions. *See Garcia v. Clark*, No. 1:10-CV-00447, 2012 U.S. Dist. LEXIS 51771, 2012 WL 1232315, at *6 n. 5 (E.D. Cal. Apr. 12, 2012) (noting entitlement to inspect discoverable information may be accommodated in ways which mitigate institutional safety concerns); *Robinson v. Adams*, No. 1:08-cv-01380-AWI-BAM, 2012 U.S. Dist. LEXIS 36028, 2012 WL 912746, at *2-3 (E.D. Cal. Mar.16, 2012) (requiring protective order regarding documents containing information which implicated the safety and security concerns).

As expressed at oral argument, there may be some overlap between the objective and subjective Category 1 information. The Court, however, declines to order an in camera review, and instead trusts counsel to meet and confer to craft an appropriate protective order and identify and produce all relevant, responsive documents consistent with this Order.

**2. Defendants Have Made a Threshold Showing for Official Information Privilege for the Category 2 and Category 3 Documents**

Plaintiffs' Category 2 Requests for Production seek documents related to FPD policies, practices, and training procedures. Category 3 documents seek non-incident records and personnel files of defendant officers, including but not limited to reports alleging excessive use of force, or use of deadly force, internal affairs investigations, discipline files, citizen complaints/investigations/related documents regarding non-incident uses of force, hours worked, employment applications, training, reprimands, demotions, resignation, retirement, or termination. Defendants concede that Plaintiffs' Categories 2 and 3 documents are relevant and proportional to the needs of the case. However, in the absence of a protective order, Defendants argue that the Categories 2 and 3 documents are generally considered "official information" and therefore

15

protected by the official information privilege.

As discussed above, a prerequisite to asserting the official information privilege is that the government must make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. *Kelly*, 114 F.R.D. at 670. Again relying on the declaration of Lt. Casto, Defendants argue that the Category 2 and Category 3 documents contain sensitive law enforcement information which should be protected from widespread public dissemination to safeguard law enforcement techniques and procedures.

In *Bernat v. City of California City*, the Court found insufficient a declaration that "fail[ed] to evaluate how and to what extent a well-crafted protective order would minimize the impact on the interests at issue [and] . . . how disclosure of the specific information sought would result in harm." 2010 U.S. Dist. LEXIS 111538, 2010 WL 4008361, at *3 (relying on an insufficient declaration to overrule the government's assertion of the official information privilege, the deliberative process privilege and the law enforcement privilege.)

Likewise, in *Soto v. City of Concord*, the court found that, where the defendants asserted only "the general proposition that internal affairs investigatory documents and statements of police officers and/or witnesses should remain secret in order to encourage 'frank discussions,'" that assertion was "insufficient to meet the threshold test for invoking the official information privilege." 162 F.R.D. at 614. Moreover, the Court noted that the defendants failed to address how disclosure pursuant to a protective order "would create a substantial risk of harm to significant government interests." *Id.*

As seen in *Soto* and *Bernat*, a "general assertion" that a law enforcement organization's internal investigatory system would be harmed by disclosure of the documents is insufficient to meet the threshold test for invoking the official information privilege. However, the Courts in *Soto* and *Bernat* weighed disclosure against the backdrop of "a carefully crafted protective order." *Kelly*, 114 F.R.D. at 670.

Here, Defendants' declaration specifically addresses credible safety concerns that would result if, as Plaintiffs request, disclosure would occur without a protective order. Specifically, Lt. Casto states that disclosing the personnel files which contain private information "to the news media" would

"create a specific safety risk to the witnesses and officers involved—particularly by disclosure-production of officer personal information in the officers entire personnel file…improperly taint the jury pool, and...incite the public resulting in additional safety concerns to the officers, witnesses, and public at large." Casto Decl. at ¶ 19, 24. Under these circumstances, the Court finds Lt. Casto's declaration states more than just a generalized assertion of harm. Without a protective order, the officers' privacy rights and the City's ability to safeguard its officers is adversely impacted by exposure of this information to the public. Accordingly, Defendants have met their initial threshold burden to demonstrate that disclosure without a protective order would threaten governmental and privacy interests.

### A. Disclosure of Category 2 and Category 3 Documents Shall Occur Subject to a Protective Order

Having determined that Defendants have properly demonstrated the threshold showing to invoke the official information privilege with respect to the Category 2 and Category 3 documents, the Court would traditionally turn to weighing the government's interests in maintaining the secrecy of these documents in question against Plaintiffs need to obtain this discovery. Instead, however, the Court finds its recent ruling in *Macias v. City of Clovis* particularly instructive and consistent with that precedent finds that a protective order will serve the interests of both parties in facilitating the disclosure of the Category 2 and Category 3 documents. *See Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2015 WL 7282841, 2015 U.S. Dist. LEXIS 156106 (E.D. Cal. Nov. 18, 2015).

In *Macias*, a factually similar situation, this Court balanced the public and governmental interests in disclosing relevant officer personnel files, police department training materials, policies, procedures, and IA investigations without a protective over. *Macias*, 2015 WL 7282841 at* 5. The Court ultimately determined that disclosure of police materials and personnel files without a protective order would violate significant privacy interests of defendant officers and unrelated third parties such as witnesses, victims, and arrestees. *Id.* at *6. Further, the potential of widespread dissemination of that information to the greater public posed a significant risk to the police department's law enforcement efforts, safety, and the ability to recruit future officers and

employees. *Id.* at *5.

Consistent with the outcome in *Macias*, the Court here recognizes the privileged nature and the inherent privacy and safety concerns associated with the requested Category 2 and Category 3 documents. However, on balance, such interests do not outweigh Plaintiffs' need to discover important information about their claims. Therefore, the Court agrees with Defendants' position: the Category 2 and Category 3 documents are relevant and discoverable but should be subject to a protective order. Further, Plaintiffs have not demonstrated any reason to depart from the almost universal procedure of employing protective orders to preclude disseminating confidential and sensitive police documents outside the instant litigation.[6]

Accordingly, the Court finds that a protective order will serve the interests of both parties in facilitating discovery, while also protecting the government's interests. Although the Court acknowledges the prior difficulty the parties have had in negotiating a protective order, given the Court's guidance on the categories of documents, the Court believes they can craft a mutually agreeable protective order to govern the documents the Court has ordered produced.

**3.  Plaintiffs' Motion to Compel the Production of the Category 5 documents is DENIED**

Finally, with respect to Plaintiffs Category 5 documents, Plaintiffs seek Dylan Noble's school records, hospital records, coroner's report, medical records, press releases from the City, facebook records, school records and other related items. Defendants object to the production of these documents because this information is equally available to the propounding party. Fed. R.Civ. P. 26(b)(2)(C)(i) requires the court to limit a responding party's obligation to produce discovery if the information sought is available from some other source that is more convenient, less burdensome, or less expensive. Despite their objection, at the hearing, Defendants expressed their willingness to produce the Category 5 documents subject to a protective order. Because the parties appear poised to work out an agreement, the Court DENIES Plaintiffs' Motion to Compel the Category 5 documents without prejudice at this time. The parties are encouraged to meet and

---

[6]  Plaintiffs have agreed that irrelevant and highly private information contained in the officers' personnel files need not be produced or should be redacted, such as telephone numbers, family member names, addresses, creditworthiness, *etc*. (Doc. 34 at 8). The Court, however, declines Plaintiffs' suggestion that the Court perform these redactions *in camera*.

18

confer to negotiate the least burdensome and cost efficient method of production for this category of documents.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Compel the Category 1 documents absent a protective order is GRANTED in PART and DENIED in PART as follows:

    a. Defendants are ORDERED to produce the Category 1 "objective factual information" documents without a protective order as detailed in this order;

    b. Defendants are ORDERED to produce the Category 1 "subjective factual information" documents pursuant to a protective order;

2. Plaintiffs' Motion to Compel the Category 2 and Category 3 documents absent a protective order is DENIED in part. Defendants are ORDERED to produce the Category 2 and Category 3 documents pursuant to a protective order;

3. As stated on the record at the hearing, Plaintiffs Motion to Compel the Category 4 documents is WITHDRAWN;

4. Plaintiffs' Motion to Compel the Category 5 documents is DENIED without prejudice;

5. The parties SHALL meet-and-confer to discuss the scope of the protective order and related redaction of sensitive information and submit a stipulated joint protective order to govern the discovery ordered in this case;

6. The Court sets a **TELEPHONIC STATUS CONFERENCE** to discuss the status of the proposed joint protective order for December 15, 2017 at 10:00 AM in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.

IT IS SO ORDERED.

Dated: **November 27, 2017**          /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE